No. 39,243

THE B. F. MCLEAN INVESTMENT COMPANY, a Corporation, *Appellee,* v. THE CITY OF WICHITA, a Municipal Corporation, *Appellant.*

(268 P. 2d 956)

Opinion filed April 10, 1954.

*Dale M. Stucky,* of Wichita, argued the cause, and *Fred W. Aley, Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Donald R. Newkirk, Gerrit H. Wormhoudt,* and *Theodore C. Geisert,* all of Wichita, were with him on the brief for the appellant.

*Morris H. Cundiff,* of Wichita, argued the cause, and *Dale M. Bryant, Garner E. Shriver,* and *Glenn J. Shanahan,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal arises out of a proceeding in eminent domain, the principal question being whether the trial court erred in refusing to submit special questions requested by the city.

In February of 1952 the city of Wichita commenced a proceeding to condemn lands lying along the Arkansas River for use in a flood control project. At that time The B. F. McLean Investment Company owned a tract of about 460 acres bounded on the west by the Arkansas River, on the north by Twenty-first Street, on the east by the Little Arkansas River and on the south by Twenty-fifth Street.

As the result of other proceedings pertaining thereto, Anna McLean became the owner of all that part of the above 460 acre tract lying west of Bullinger Street and containing about 140 acres. In the condemnation proceedings a tract of 8.95 acres was taken from the northwest corner of the McLean lands. After the commissioners appointed by the district court made their report and award of damages, The B. F. McLean Investment Company and Anna McLean gave notice of appeal from the award.

On the trial of that appeal it was stipulated that Anna McLean was the owner and entitled to any award rendered by reason of the condemnation of that land described in the condemnation proceedings as Tract No. 1. Neither the abstract nor the counter abstract contains the description of the lands included in the above Tract No. 1. In her opening statement Mrs. McLean stated that she owned all of the land west of Bullinger Street which consisted of two tracts divided down the center, the tract on the north containing a little over 70 acres and the tract on the south containing a little over 70 acres; that the land taken was 8.95 acres and not only the taking but the fact of the taking would affect to a material extent the advantage and convenience of platting and that it interfered with the platting of the entire tract. An exhibit indicates that the land taken was triangular in form and was that portion of plaintiff's tract lying to the northwest of a line running from a point about 724 feet east of the intersection of plaintiff's north line and the east bank of the Arkansas River to a point on the river bank about 1,075 feet south of that intersection, and that the southernmost point of that triangle was about 400 feet north of the line between the two 70 acre tracts above mentioned.

For the purposes of this appeal the evidence need not be reviewed at length and in the review made we restrict our statement to testimony of plaintiff and her witnesses given on direct examination. Anna McLean testifying in her own behalf said she owned the tract of approximately 138 acres and that its most valuable use was for subdivision and building sites and work on subdividing had been commenced; that the construction of the levee on the part of her land which was taken would hurt the remaining part and that she thought it would affect the land approximately 500 feet back (from the levee) as far as building was concerned and it would cut the property value at least in half. Another witness testified as to the value of the land taken and that the taking would damage the re-

mainder a distance back of at least 600 feet. Two witnesses testified there was a strip about 600 or 700 feet south of the levee the value of which was cut in half. A fifth witness testified as to the value of the land taken and that the taking damaged as much as fifty acres adjoining the ditch.

At the close of all the evidence the trial court gave instructions to the jury against which no objections were lodged, and advised the jury that the single issue was the amount of just compensation to be awarded Anna McLean for the taking of her property, and in determining that amount the jury were to consider the value of the lands taken plus the damages, if any, arising to the other lands of Anna McLean not taken.

The city requested the trial court to submit the following special questions:

"If you find that there have been any damages to the property remaining to the landowner after the taking of the 8.95 acres by the city, you are required to answer the following Special Questions:

"No. 1. State the fair cash market value of the entire 138 acre tract belonging to the landowner as of October 7, 1952.

"No. 2. State the fair cash market value of the 129.05 acres remaining immediately after the taking but on the same date, October 7, 1952, taking into consideration the use to which the property will be put by the City."

This request was denied. The record as abstracted does not disclose any reason the trial court may have given for its ruling.

Thereafter the jury returned a general verdict in favor of Anna McLean for a single sum. The city's motion for a new trial was denied and it appealed from that ruling. Its specification of errors covers the refusal to submit the special questions and the overruling of its motion for a new trial.

The right of a party to an action to have special questions submitted to a jury under the provisions of G. S. 1949, 60-2918 is treated exhaustively in the briefs of both appellant and appellee and numerous cases are cited. In view of the factual situation here presented it is unnecessary that we refer to and discuss all such cases. In view also of the provisions of the above statute that in all cases the jury shall render a general verdict and that the court shall, at the request of a party, direct the jury to find upon particular questions of fact to be stated in writing by the party requesting the same, and our many decisions holding generally that if the questions submitted are on a controverted fact, are material or are of a type from which there is evidence from which an answer may

be determined, while the trial court has a duty to examine the questions and see they are clearly stated, if the test is met the questions should be submitted, it seems advisable to first take notice of appellee's contention that the trial court did not commit error in refusing to submit the questions requested.

The first portion of appellee's argument is that the questions assume that the entire tract involved consisted of 138 acres, a matter for the jury to determine. It is true that some evidence indicated the tract contained 140 acres, but as shown above, appellee testifying personally said she owned a tract of approximately 138 acres and that the taking affected the value of the land not taken. Whatever the exact acreage was, that was not the question in issue; the question was, under the court's instructions, what was the value of the land taken and the damage to the land not taken. In view of this testimony we need not dwell on the situation discussed in *L. N. & S. Rly. Co. v. Wilkins,* 45 Kan. 674, 26 Pac. 16, where it was held that damages allowed were not restricted to the tract involved. Appellee makes some argument that it might as well be assumed the tract in question was the original tract of about 460 acres owned by The McLean Investment Company. There is no doubt from the record that entire tract was divided and appellee's ownership covered only the tract she said was approximately 138 acres and that only the latter tract was involved. Pursuing the contention further appellee says her entire tract is divided into two tracts of about 70 acres each and it might as well be assumed that only one was affected, *i. e.,* the north one. That assumption would be contrary to the evidence noted above. Anna McLean referred to her tract of 138 acres and various other witnesses specified damage from 600 to 700 feet from the levee and a mere calculation from the distances above set forth shows that that damage would affect a part of the south portion. Appellee also argues, at least inferentially, that because appellant's witnesses testified only as to the value of the land taken and did not testify as to the specific amount of the lands that were to be considered by the jury, that it may not be assumed 138 acres was the tract which may have been damaged by the taking. While it has been held that a trial court may refuse to submit a question which assumes that certain facts, which are in dispute, exist ( e. g., *Elliott v. Reynolds,* 38 Kan. 274, 16 Pac. 698, and *Toelle v. Sells-Floto Shows Co.,* 111 Kan. 562, 207 Pac. 849 ), in our opinion the requested questions did not offend that rule.

We recognize also the rule contended for that the trial court should not submit special questions that are intended or are liable to confuse or entrap the jury (e. g., *Railway Co. v. Hale,* 64 Kan. 751, 68 Pac. 612.). We fail to see its applicability here. Under the trial court's instructions the jury were to find two things, the value of the land taken and the damages to the land not taken, and at least generally speaking the purpose of the questions was to ascertain what amount the jury allowed for the damages to the land not taken. It may well be the questions could have been phrased differently, but to say the least, they directed the trial court's attention to the fact that appellant desired an answer on an ultimate fact in issue. If the trial court was of the opinion the questions submitted did not state the matter fully and should have encompassed the value of the land taken as well as the damage to the land not taken, it was competent for it to supervise and shape the special questions and limit them to ultimate facts on controverted issues. See *Snyder v. Eriksen,* 109 Kan. 314, 198 Pac. 1080.

Appellee also argues the trial court's ruling was correct for the reason the questions did not pertain to material issues or the evidence on which either party submitted its claim. Under this heading she argues what her evidence tended to show and what the appellant's evidence did not show. Our brief review of appellee's own evidence makes it clear that she was attempting to recover for land taken and damages to land not taken and that the cause was submitted under instructions on that theory. We have no question of the sufficiency of the evidence, but only whether appellant was entitled to inquire as to either one or two of the elements essential to a recovery by appellee. In our opinion the questions sought to be submitted pertained to a material matter.

Appellee also argues that answers to the special questions requested would not be controlling as to the measure of damages under the particular statutes under which the property was taken, and presents at some length an argument as to the measure of damages and that the damages may not be offset by any benefits she may receive from the flood control improvements, and further that the instructions given to the jury, which were not objected to became the law of the case, and that special questions conflicting with those instructions need not be submitted. We agree that the instructions control. The record does not indicate the appellant sought to offset appellee's damage by any benefit she would receive

from the flood control project and the instructions included in the counter abstract do not mention any such matter for consideration by the jury. In its brief, appellant makes no contention as to the correctness of the trial court's instructions and we need not devote any space to the measure of damages. In view of what has been said in the preceding paragraphs of this opinion, we think it clear that it may not be said the special questions called for answers conflicting with the instructions to the jury, but on the contrary were consistent therewith.

We do not think it necessary to refer to cases cited by the appellant as to the right to have special questions submitted and to discuss those cases. The problem was before us in *Finke v. Lemle,* 173 Kan. 792, 252 P. 2d 869. In that case the defendants requested submission of eight questions. The trial court refused to submit the questions as requested but submitted two of its own. On defendant's appeal this court disposed of a contention of error saying, in part:

"Appellants argue that under the statute, G. S. 1949, 60-2918, a defendant has the right to request and have submitted at least ten special questions. It must be conceded this is true if the questions requested are on any controverted facts, if they are material, and if they are of the type that there is evidence from which the jury can answer them (See *Colin v. DeCoursey Cream Co.,* 162 Kan. 683, 688, 178 P. 2d 690, and cases there cited, also the many other cases collected in Hatcher's Kansas Dig., Trial, §§ 266 to 281, incl.; West's Kansas Dig., Trial, §§ 349, 350). On the other hand the authorities just cited and many others (See, e. g., *Bothe v. True,* 103 Kan. 562, 175 Pac. 395; *Doty v. Crystal Ice & Fuel Co.,* 122 Kan. 653, 253 Pac. 611; *Sluss v. Brown-Crummer Inv. Co.,* 143 Kan. 14, 53 P. 2d 900; *Moseman v. Penwell Undertaking Co.,* 151 Kan. 610, 618, 100 P. 2d 669; *Alexander v. Wehkamp,* 171 Kan. 285, 291, 232 P. 2d 440), recognize the trial court has a wide discretion respecting the special questions to be submitted to the jury and that when they are not of the type above mentioned or where it appears they are not pertinent to the issues, supported by the evidence, or intended to bring out some ultimate fact in the case it is proper to refuse to submit them. By way of further illustration see *Snyder v. Eriksen,* 109 Kan. 314, 198 Pac. 1080, where we held:

"'It is competent for the court to supervise and shape special interrogatories that are submitted to a jury and it may reject questions that are improper or immaterial and limit the questions to ultimate facts on controverted issues.' (Syl. ¶ 3.)" (l. c. 797.)

As has been indicated heretofore we think the special questions submitted were on controverted facts, they referred to material matters and there was evidence from which the jury could answer them. We do not comment on whether the trial court should have

amplified or modified the requests made, as it made no attempt to do so.

There is no question but that the matter was urged on the hearing of the motion for a new trial. In our opinion the trial court erred in not granting a new trial. Under the circumstances we need not discuss appellant's contention the verdict is excessive.

The judgment of the trial court is reversed and the cause is remanded for a new trial.